## GRAND LODGE COLORED KNIGHTS OF PYTHIAS OF TEXAS v. PRESTON.

### No. 2875.

Court of Civil Appeals of Texas. Beaumont.

Jan. 30, 1936.

Rehearing Denied Feb. 19, 1936.

Sonfield, Sonfield & Murphy, of Beaumont, for appellant.

Quentin Keith, of Port Arthur, for appellee.

O'QUINN, Justice.

This suit was brought by Serene Preston against the Grand Lodge Colored Knights of Pythias of Texas, a fraternal benefit society, to recover on a life insurance certificate in the sum of $500 issued on the life of Louis Williams, wherein appellee was named beneficiary, and for certain burial benefits provided for in the certificate. She also sued for 12 per cent. penalty and an attorney's fee of $225 which she alleged to be reasonable. She alleged that the insured, Louis Williams, while the insurance certificate was in full force and effect, died on September 17, 1932, and that proof of death was made to appellant upon blanks furnished by appellant for that purpose, and due demand made for payment which was refused. In the alternative, she alleged that, if the deceased, Louis Williams, had not paid all of the dues and premiums as provided in the certificate, such failure, if any, was waived by appellant by certain acts of appellant, in that (a) it, knowing that deceased, Williams, had failed to pay the dues and premiums as provided in the certificate, had, upon request for payment of the insurance by appellee, furnished blanks for making proof of the death of insured; and (b) that, relying upon appellant's act, she went to the trouble and expense of furnishing proof of insured's death, because of which said acts appellant had waived the right to insist upon a forfeiture of the certificate for nonpayment of dues.

The defendant, appellant, answered by general demurrer, general denial, and specially that the policy or certificate of insurance had lapsed and had been forfeited for failure to pay the quarterly dues or premiums as required by the terms of the policy, pleading the various portions of the policy relating thereto.

The case was tried to the court without a jury, and judgment rendered in favor of appellee for the amount of the policy, $500, $75 burial benefits, 12 per cent. penalty, and $100 as attorney's fee. We have the case on appeal.

The by-laws of the society, which, by the terms of the policy, were made a part thereof, provide that, if the premiums and dues were not paid by the holder of the policy at the times and in the manner provided by the constitution, the laws, and regulations of the society, the certificate "shall be null and void; and, shall so remain until revived" as permitted by the constitution and laws of the order. They further provide that the premiums or dues should become due and payable quarterly on the 1st day of January, April, July, and October of each year, and that, if a member failed to pay such premium on or before the 1st day of February, May, August, and November of each year, he should ipso facto stand suspended, and that, if death occurred during such quarter while the insured was so suspended, the insurer would not be liable on said certificate of insurance. They further provide that no officer of any subordinate lodge or of any Grand Lodge should have any authority to waive this provision (relative to the failure to pay premiums and suspension of the member and lapsing of the policy) of the laws. It was further provided that any member who had become suspended might place himself in good standing and revive his certificate of insurance at any time between the first and the last day of the first month in the next succeeding quarter by paying all delinquent premiums and dues, together with the current premiums for the ensuing quarter.

It appears that the policy was issued August 8, 1931. The quarterly premium was $2.25, with lodge dues of 50 cents. The insured paid all premiums up to and including April 1, 1932, but failed to pay the quarterly premium due July 1, 1932, and no effort was made by the insured or by any one for him to pay said dues, because of which failure to pay said dues he was automatically suspended, and the certificate of insurance lapsed and became ineffective, "null and void," as declared by the by-laws. While matters thus stood, insured died on September 17, 1932.

Appellee, Serene Preston, was a sister of the insured, Louis Williams. She lived at Port Arthur, Tex. Louis Williams died at Galveston, Tex., and she went to Galveston to attend his funeral. We gather from the record that insured belonged to "Island City Lodge No. 459 at Galveston," and that one Clay was the chancellor commander of the lodge. It appears that appellee had a cousin living at Galveston and

that she stayed at his home while there. Her cousin, before she arrived, had seen Clay, the chancellor commander of the lodge, and talked with him about the insurance and requested him to call and see appellee. Appellee testified that Clay came to see her and asked her to remain in Galveston for a day or two, and said that he would get blank forms for proof of death for her to make out showing that Louis Williams was dead, and that she gave him the insurance policy, and that he did get the blank proofs and she filled them out and paid a notary public for qualifying her to same, and Clay sent the proofs of death to the Grand Lodge. She stayed in Galveston about two days. In about three months she was notified that the payment of the insurance was refused because the policy had lapsed because deceased had failed to pay his dues. She said that was the first that she had heard about deceased being behind with his dues—that Clay, the chancellor commander, had not mentioned anything of the kind to her.

The record contains an agreement of the parties that Louis Williams failed to pay the insurance premium and the Grand Lodge dues payable July 1, 1932, and the record shows that same were not paid at any time. So, when Williams died on September 17, 1932, his policy had lapsed and was not in effect.

The only question here is whether by receiving proofs of death appellant waived the lapsing or forfeiture of the policy. It is strongly insisted by appellee that, when appellant, having knowledge that insured had failed to pay the quarterly premiums as required by the policy, and, under the terms of the policy, had thus become automatically suspended from the fraternity, and his policy lapsed (in the language of the by-laws "null and void"), furnished blank forms for the proof of death, and permitted and encouraged appellee to go to the trouble and incur the expense of making the proofs of death, and received same when executed and considered same, it by these acts waived the nonpayment of the premiums and the lapsing of the policy, and treated the policy as in effect and acknowledged its liability to pay the insurance.

This is a rather novel insistence to us. We are unable to conceive how a waiver, such as claimed, could give life to a dead policy. With the policy admittedly dead, no cause of action on it existed. Can a waiver give a cause of action where none

existed? Proof of death, in connection with an insurance policy, is but an evidentiary matter necessary to show liability —a cause of action on the policy. The proof of death is not the cause of action, but merely one step in the evidence necessary to enforce the liability of the insurer after the death of the insured. The proof of death may be waived, but the death of the insured while the policy is in effect is the one condition under which payment may be enforced. The two facts, death of the insured and life in the policy, must concur, or no liability exists.

Moreover, the question of waiver is one of intent. If it was possible to revive a lapsed and ineffective policy by mere waiver, and not by the provisions of the policy contained in the by-laws of the society and in the policy, which we do not believe, still, as we view the record, there was no evidence of waiver. Appellant did not invite appellee to make proof of death, but, at the request of a cousin of appellee, the chancellor commander of the local lodge courteously called on appellee, and then procured blank proofs of death, and when she made them out forwarded them to the Grand Lodge. Under the by-laws he could not waive the payment of the past-due premium. It was the right of appellee to make the proof of death and submit same to the Grand Lodge for its consideration, and it is our opinion that it was the duty of the lodges, subordinate and grand, to receive and consider this proof when offered, regardless of the status of the policy. The fact that such proof was made and was passed upon by the Grand Lodge did not even tend to show waiver under the other facts and the by-laws of the society.

Where an insurance society, as here, has received only three quarterly premiums on a policy, and the policy has lapsed for failure to pay other premiums, we cannot think that, by merely receiving and passing upon proof of death of the insured while the policy was lapsed and not in effect, it could reasonably be inferred that the insurer intended to waive the payment of the premium and the lapsing of the policy, and thus become liable to pay the face of the policy, $500, and the funeral benefit of $75. The failure to pay the premium might be waived for the purpose and with the intention of same being adjusted by the insured in the future as permitted in the policy and by-laws, but, where the insured is dead and the policy had lapsed and there could be no future adjustment of the failure to pay the premium, and no restoration of life to the policy, there could be no waiver of the failure to pay the premium without also waiving the lapsing of the policy and thus creating liability to pay without restoration of the policy, which, as we view it, would be contrary to reason and against the best interests of the society, and to so hold would be an unreasonable inference from the undisputed facts.

Appellee cites us to the case of Grand Lodge Colored Knights of Pythias of Texas v. Green (Tex.Civ.App.) 69 S.W.(2d) 149, as authority for the proposition that under the facts appellant had waived the forfeiture of the policy because of failure to pay the required premium. We think that case is easily distinguished from the instant case on the facts. In that case, as in this, the policy had lapsed for nonpayment of the quarterly premium. But here the parallel ends. In the cited case the insured had paid all premiums from June, 1909, to and including October 1, 1931, but failed to pay the premium due January 1, 1932. In the early part of March, 1932, his wife undertook to pay the defaulted premium, which was not accepted by the insurer; it stating to her that the premium could not be paid until the first month of the succeeding quarter. Before the first month of the succeeding quarter, the insured took sick and died. It thus appeared that the wife of the insured offered to pay the defaulted premium within the time when it would not have been barred under the by-laws of the society. No such facts existed in the instant case. There, too, all premiums had been paid for about thirteen years, and the defaulted premium tendered almost as soon as defaulted, and the tender refused. It could have and should have been accepted by the subordinate officer of the lodge, having been tendered well within the time provided by the constitution and by-laws of the society, and sent in to the Grand Lodge to be applied on the premium when the time arrived under the regulations. No such facts existed in the instant case. Here the insured had paid only three quarterly premiums of $2.25 with lodge dues, and no effort to pay or to tender payment made of the defaulted premium. There, according to the court's opinion, there was a direct invitation by the insurer to the beneficiary to prepare and file proof of death; here the chancellor commander of the lo-

cal lodge, after being requested, called to see the beneficiary, and then furnished blank forms for proof of death and forwarded same in to the Grand Lodge, as it was his duty to do in any circumstance. We fail to find any facts or circumstances in the instant case pointing to an intention to waive the payment of the premium or the lapsing of the policy. Again, the Supreme Court granted a writ of error in the Green Case, because of certain alleged conflicts, and also upon an assignment invoking the identical question here involved.

The judgment of the trial court is reversed and judgment here rendered for appellant that appellee take nothing by her suit.

WALKER, Chief Justice (concurring).

I agree with the conclusion of the Waco Court of Civil Appeals on the issue of "waiver" in the Green Case cited by Mr. Justice O'QUINN, but concur with my brethren in their conclusion that the facts of this case did not raise the issue of waiver.